IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| JOE WAYNE McDOWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 115-002 |
| | ) | |
| STAN SHEPARD, Warden, and | ) | |
| BETTY McDOWELL, | ) | |
| Unit Manager of 14 Area, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Augusta State Medical Prison ("ASMP") in Grovetown, Georgia, is proceeding *in forma pauperis* ("IFP") in this case filed pursuant to 42 U.S.C. § 1983. Because Plaintiff is proceeding IFP, his complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006).

## I. SCREENING OF THE COMPLAINT

### A. BACKGROUND

Plaintiff names the following Defendants: (1) Stan Shepard, a deputy warden of care and treatment at ASMP, and (2) Betty McDowell, a unit manager at ASMP. Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

As a result of Plaintiff fracturing his right foot, doctors at ASMP put a cast on that foot and gave Plaintiff a medical profile for a bottom bunk on October 21, 2014. (Doc. no. 1, p. 7.)

Approximately one week after receiving the bottom bunk profile, Plaintiff also received an appliance profile for a C-PAP breathing machine, which required that he have a bunk near an electrical outlet so that he could plug the machine in at night. (Id. at 7-8.) When dormitory officers told Plaintiff there was not an available bottom bunk near an outlet, Plaintiff packed up all of his property and set it outside the dormitory. (Id. at 8.)

When Defendants Shepard and McDowell came through the dormitory for inspection, Plaintiff explained his dilemma regarding his profiles and bunk assignment to Defendant Shepard. (Id. at 9.) Defendant McDowell and a correctional officer told Defendant Shepard the problem would be taken care of, but after Defendant Shepard left, they simply sent Plaintiff back into the same dormitory without changing his bunk assignment. (Id.) Plaintiff slept in the television room that night so that he could plug in his C-PAP machine. (Id. at 10.)

The next day, Plaintiff again put all of his property at the front of the dormitory, and when Defendant McDowell saw him, she told a correctional officer to send Plaintiff back to his assigned bunk, but if Plaintiff did not go, he should be handcuffed. (Id.) Plaintiff refused to go back into the dormitory, so he was handcuffed, escorted by Defendant McDowell to the lockdown unit, and given a disciplinary report. (Id.) Plaintiff stayed in the lockdown unit from October 31 until November 14, 2014, but upon his release, he was not assigned to a bottom bunk with access to a plug. (Id. at 11.)

Plaintiff submitted a grievance about the matter to his counselor on November 14th, and he wrote a letter on November 17, 2014, to Defendant Shepard, Defendant McDowell, and the medical director detailing his need for a bottom bunk with "safe access to a plug" for his C-PAP machine. (Id. at 11, 14.) Receiving no response, Plaintiff sent a second letter on November 24, 2014, to Defendant McDowell, but she told him that she did not plan on doing anything to help

2

him. (Id. at 12.) Plaintiff signed his complaint for this case on December 1, 2014. (Id. at 6.) Recognizing that he has not exhausted the prison grievance procedure, Plaintiff states that because prison officials "have so long to respond and then nothing could be done," (id. at 13), he "felt it was proper to go fourth (sic)" without waiting for a response and then filing an appeal. (Id. at 4.)

### B. DISCUSSION

Plaintiff's complaint should be dismissed because of his failure to exhaust administrative remedies. Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Dismissal for failure to state a claim is appropriate if it is clear from the face of a complaint that the plaintiff failed to exhaust administrative remedies. See Jones v. Bock, 549 U.S. 199, 215 (2007); Solliday v. Federal Officers, 413 F. App'x 206, 208 (11th Cir. 2011); Anderson v. Donald, 261 F. App'x 254, 256 (11th Cir. 2008); Clark v. Georgia Pardons and Paroles Bd., 915 F.2d 636, 640-41 (11th Cir. 1990). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical

3

procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).[1]  Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

The administrative grievance procedure applicable in this case is governed by Georgia Department of Corrections' Standard Operating Procedure ("SOP") IIB05-0001. Inmates are encouraged to resolve complaints on an informal basis before filing a grievance, however this step is not required. SOP IIB05-0001 § VI(A)(4). The administrative remedies procedure commences with the filing of the Original Grievance. The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the Original Grievance and give it to a Counselor. Id. § VI(D)(1)-(5). Once the Counselor

---

[1]Other federal circuits have similarly held that the PLRA does not allow a plaintiff to exhaust administrative remedies while his case is pending. See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 537-38 (7th Cir. 1999).

gives the grievance to the Grievance Coordinator, they will screen it in order to determine whether to accept it or recommend that the Warden reject it. Id. § VI(D)(5). If the Warden rejects the grievance, the inmate may appeal the rejection to the Central Office. Id. § VI(D)(5)(f).

If the Grievance Coordinator accepts the grievance or the Warden rejects the coordinator's recommendation to reject the grievance, the Grievance Coordinator will appoint a staff member to investigate the complaint. Id. § VI(D)(6). After the staff member prepares a report, the Grievance Coordinator submits a recommended response to the Warden. Id. The Warden or a designee reviews the grievance, the report, and the recommendation and issues a decision in writing. Id. The Warden has forty days from the date the offender gave the Original Grievance to the Counselor to deliver a decision. Id. § VI(D)(7).

The inmate then has seven calendar days from the date he receives the response to file a Central Office Appeal to the Office of the Commissioner, but this time limit may be waived for good cause. Id. § VI(E)(2). If the Original Grievance is rejected, or if the time allowed for a response to the Original Grievance has expired without action, the offender may file a Central Office Appeal. Id. §§ VI(E)(3)-(4). The Office of the Commissioner or his designee then has 100 calendar days after receipt of the grievance appeal to deliver a decision to the offender. Id. § VI(E)(7).

The SOP also provides a process for Emergency Grievances, defined as "[a]n unexpected situation involving a significant threat to the health, safety or welfare of an offender that requires prompt action." Id. § IV(A). Emergency Grievances must be immediately referred to the Grievance Coordinator to determine if the issue raised fits the definition of an Emergency Grievance, and if it does, whatever action is necessary to protect the health, safety, or welfare of

5

the prisoner must be taken immediately. Id. § VI(F)(1)-(2). If determined to be an emergency, the information will be documented, and the prisoner must be given a written response within five calendar days. Id. § VI(F)(2). If the grievance is not determined to be an emergency, it will be returned to the prisoner, who then has seven days to file an Original Grievance. Id. § VI(F)(3).

Here, Plaintiff states that he submitted a grievance on November 14, 2014. (Doc. no. 1, p. 14.) The SOP allows for a forty-day response period from the time of submission of the Original Grievance. SOP IIB05-0001 § VI(D)(7). Yet, after submitting a grievance on November 14, 2014, Plaintiff signed the complaint on December 1, 2014 – well before the expiration of the time period for the Warden to respond. Moreover, even if he did not agree with the response from the Warden or did not receive a timely response, he would still have had to file an appeal with the Central Office in order to exhaust his administrative remedies. See id. §§ VI(E)(3)-(4). Indeed, Plaintiff admits that he did not exhaust his administrative remedies prior to the commencement of this case because he felt that prison officials had too long to respond, and in any event, he felt using the grievance procedure was futile because nothing would be done to correct the problem. (Doc. no. 1, pp. 4, 13.)

To the extent Plaintiff complains that the failure to honor his profiles issued by doctors in the medical department at ASMP amounted to a life threatening situation, the SOP provides for filing an Emergency Grievance. SOP IIB05-0001 § VI(F). Yet, Plaintiff did not exhaust that process either, as he acknowledges that he had not received any type of grievance response at the time he filed his complaint. (Doc. no. 1, p. 3.) As the SOP explains, a written response to a grievance submitted as an emergency must be provided within five days, and if the grievance is

not an emergency, the prisoner must follow the procedure for filing an Original Grievance. SOP IIB05-0001 § VI(F). The exhaustion requirement applies regardless of whether the administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Thus, Plaintiff's belief that the administrative process is too slow and/or futile does not save his case from dismissal.

In sum, to properly exhaust, Plaintiff must use all steps of the available exhaustion procedure. Woodford, 548 U.S. at 93. Additionally, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure *before* initiating this suit. Higginbottom, 223 F.3d at 1261. It is plain from the face of Plaintiff's complaint, indeed he concedes, that he failed to complete the entire grievance process prior to submitting the current complaint. (Doc. no. 1, pp. 4, 13.) Therefore, the complaint fails to state a claim upon which relief can be granted. See Solliday, 413 F. App'x at 208 ("A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted.").

Finally, the Court notes Plaintiff wrote a letter to the Clerk of Court, which was docketed as a motion, in which he requests that the Court order Defendant Shepard to transfer him to a different prison. (Doc. no. 13.) First, a letter addressed to the Clerk of Court is not a motion. "[I]f a litigant seeks judicial action of any sort . . . it must be contained within a motion arising from a properly filed lawsuit." In re Unsolicited Letters to Federal Judges, 120 F. Supp. 2d 1073, 1074 (S.D. Ga. 2000). Court action may not be requested in a personal letter. Id.

Second, even if Plaintiff had properly put his request in a motion, he is not entitled to the relief he seeks. The law is well established that prisoners generally have no inherent

constitutional right to be confined in a particular institution. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983) ("[A]n inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State."); Meachum v. Fano, 427 U.S. 215, 225 (1976) ("Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose."). Nor is it appropriate for the Court to interject itself into the day-to-day operations of a prison such as making decisions about prison assignments. See Bell v. Wolfish, 441 U.S. 520, 547-48 (1979). Thus, the request for a transfer contained in Plaintiff's letter should be **DENIED**.

## II. CONCLUSION

For the reasons set forth above, Plaintiff's complaint fails to state a claim upon which relief can be granted. Therefore, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's request for a transfer be **DENIED** (doc. no. 13), that the complaint be **DISMISSED** without prejudice for failure to exhaust administrative remedies, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 2nd day of April, 2015, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA